United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 30, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

))))))))))))))))))))))))))))

No. 06-50460
Summary Calendar

))))))))))))))))))))))))))))

MANUEL BANLES MIRANDA,

                  Plaintiff-Appellant,

    v.

NATIONAL POSTAL MAIL, National Postal Mail Handlers Union;
NATIONAL POSTAL MAIL HANDLERS UNION, LOCAL 311,

                  Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Texas
No. MO-06-CV-012

---

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

Per Curiam:[*]

    Plaintiff-Appellant Manuel Banles Miranda ("Miranda")

appeals a district court order granting summary judgment to

Defendants-Appellees National Postal Mail Handlers Union

("NPMHU") and its Local 311 (collectively, "Defendants"). For the

---

    [*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

reasons that follow, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Miranda has been an employee of the United States Postal Service ("USPS") since 1981. He began there in a mail handler position in the Odessa, Texas post office and in 1989 was transferred to a mail handler position at the Midland Processing and Distribution Facility. Defendant NPMHU is the exclusive bargaining representative for members of the mail handler craft employed by USPS, and Defendant Local 311 represents the mail handlers at the Midland facility.

In June 2001, Miranda voluntarily transferred to a letter carrier position in Odessa, Texas, a position outside the mail handler craft. In January 2002, however, he returned to a mail handler position in Midland, Texas. Sometime after Miranda's return, he discovered that he had lost his seniority due to his transfer. Because he returned to a mail handler position within one year of his transfer out, Miranda believed that he should have retained his seniority. Miranda filed a grievance through his union steward. USPS initially complied with Miranda's request, restoring his seniority date to 1981.

Sometime in the fall of 2003, however, Local 311 official Robert Rodriguez ("Rodriguez") contacted USPS management, claiming that the restoration of Miranda's seniority had been in

2

error. According to Rodriguez, the collective bargaining agreement between NPMHU and USPS provided that seniority could be restored only for persons in management positions. Miranda's seniority was again rescinded, and a seniority list reflecting this correction was posted on the employee bulletin board in November 2003. Miranda claims that the loss of his seniority has prevented him from obtaining vacation time during Thanksgiving week and has precluded him from successfully bidding on certain jobs. Miranda also claims that Rodriguez "used intimidation tactics against him" by convincing management to schedule Miranda for work on December 25, 2004, after Miranda had initially be given that day off.

Miranda filed suit against the Defendants for breach of fiduciary duty in Texas state court on December 27, 2005. Defendants filed a notice of removal to federal court on January 20, 2006. Subsequently, Defendants moved for summary judgment on the basis of untimeliness. Defendants argued that Miranda's state law claim was preempted by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq., and that a six-month statute of limitations applied. The district court determined that removal to federal court was proper under this court's holding in Richardson v. United Steel Workers of America, 864 F.2d 1162, 1170 (5th Cir. 1989). Finding that Miranda's claim was cognizable only as a duty of fair representation claim under the NLRA, the district court concluded that a six-month limitation period

3

applied. Because none of the instances of Defendants' purported breach of duty occurred within six months of the date Miranda filed his suit, the district court granted the Defendants' motion for summary judgment.[1] On appeal, Miranda does not renew his objection to the removal of his suit, and only challenges the district court's granting of summary judgment.

## II. JURISDICTION AND STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1291, this court has jurisdiction over an appeal from a grant of summary judgment. We review a district court's grant of summary judgment de novo. Dallas County Hosp. Dist. v. Assocs. Health & Welfare Plan, 293 F.3d 282, 285 (5th Cir. 2002). Summary judgment is proper when the pleadings, discovery responses, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When deciding whether there is a genuine issue of material fact, this court must view all evidence in the light most favorable to the non-moving party. Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir. 2001).

---

[1] The district court also granted Defendants' summary judgment motion as to a claim for retaliation that Miranda alleged for the first time in his response. Miranda has not raised this issue on appeal.

## III. DISCUSSION

Miranda maintains that his claim against the Defendants is a state law claim for breach of fiduciary duty. It is clear from Supreme Court and this court's caselaw, however, that Miranda's claim is cognizable only as a duty of fair representation claim under the NLRA. As such, it is timed barred under the applicable six-month statute of limitations.

### A.    Preemption Under the Duty of Fair Representation

The duty of fair representation is a duty held by the Supreme Court to be implied in the NLRA. See, e.g., Ford Motor Co. v. Huffman, 345 U.S. 330 (1953); Steele v. Louisville & Nashville R.R. Co., 323 U.S. 192 (1944). Because the NLRA empowers a union to become the exclusive bargaining agent of all employees in a bargaining unit, whether or not members of the union, it correspondingly implies a duty of fair representation by the union of all those employees. Bass v. Int'l Bhd. of Boilermakers, 630 F.2d 1058, 1062 (5th Cir. 1980). The duty of fair representation requires the union "fairly to represent all of those employees, both in its collective bargaining with [the employer] . . . and in its enforcement of the resulting collective bargaining agreement" and "to serve the interests of all [bargaining unit] members without hostility or discrimination toward any." Vaca v. Sipes, 386 U.S. 171, 177 (1967).

In Richardson v. United Steel Workers of America, 864 F.2d

5

1162, 1166 (5th Cir. 1989), this court interpreted <u>Vaca</u> as holding that the federal duty of fair representation preempts state substantive law. In <u>Richardson</u>, as in the instant case, we faced an appeal by plaintiffs who brought a claim against their representative union for breach of a "Texas common-law tort duty owed by a union to its members." <u>Id.</u> at 1164. We explained that "[b]ecause the plaintiffs in this case alleged that the Union breached a duty that arose from its status as their exclusive collective bargaining agent under the NLRA, <u>Vaca</u> requires that this duty be defined by federal law." <u>Id.</u> at 1166-67. We held that "[t]he Union's right to act as plaintiffs' bargaining agent is conferred by the NLRA, and . . . the duties corresponding to this right conferred by federal labor law are likewise defined solely by federal labor law." <u>Id.</u> at 1165. Thus, though the appellants had depicted their claims as state law claims, we affirmed the district court's characterization of those claims as "NLRA duty of fair representation claims." <u>Id.</u> at 1167.

The circumstances of this case and those in <u>Richardson</u> are fundamentally alike. As in <u>Richardson</u>, the duty allegedly breached by the Defendants arises from their status as Miranda's collective bargaining representatives, thus compelling the conclusion that Miranda's claims are also properly characterized as duty of fair representation claims.

B.    Attempts to Distinguish <u>Richardson</u>

6

Miranda does not address <u>Richardson</u> directly, but he does make arguments that appear to be implicit attempts to distinguish that case.

### 1. Defendants' Conduct as Bargaining Agent

In <u>Richardson</u>, the plaintiffs acknowledged explicitly that the union's duties stemmed from its status "as the bargaining agent for Plaintiffs." <u>Id.</u> at 164. Miranda, however, argues that he "is not complaining of the Union's representation against him against the employer" and that "the Union was not acting as the exclusive bargaining representative on conditions of employment for Miranda." Rather, Miranda proposes that he "is complaining of the insular conduct of the Union" and that "[Rodriguez] acted unilaterally to rescind the seniority to [his own] advantage." This characterization of Miranda's claim is inaccurate. Rodriguez was acting in his capacity as collective bargaining agent when he persuaded USPS management to rescind Miranda's seniority in accordance with Rodriguez's interpretation of the collective bargaining agreement. That Rodriguez's action may have been improperly motivated by hostility, bias, or self-interest does not imply that Rodriguez did not act as collective bargaining representative. Rodriguez's motivations go to the merits of Miranda's claim but do not change the fact that this claim is properly characterized as a duty of fair representation claim.

### 2. Independent State-Law Duty

Our opinion in Richardson acknowledged that that case did not "present the question of whether the Union was subject to an independent state-law duty of care . . . arising simply from the relationship of the union to its members" and not preempted by the NLRA.  Id. at 1167 (internal quotation marks omitted).[2] The Richardson plaintiffs' petition "did not even allege that plaintiffs are or were members of the union." Id.

By contrast, Miranda's complaint and appeal do state that he is a member of the NPMHU and its Local 311. To the extent that Miranda attempts to establish an independent state-law duty of care on this basis, however, his argument is woefully unsupported. Miranda claims that the Defendants "breached a fiduciary duty" toward him. To demonstrate that this duty exists, Miranda cites to a single Texas case, Fitz-gerald v. Hull, 237 S.W.2d 256, 261 (Tex. 1951), for the proposition that "Texas courts have found a fiduciary duty when one person trusts or relies in another." However, in addition to being an older case that concerns the relationship of parties to a joint venture, rather than that of union member to union, Fitz-gerald nowhere indicates that subjective trust and reliance alone are sufficient to create a fiduciary relationship under Texas law. Miranda has failed to establish an independent state tort duty that would

---

[2] We also noted that state law actions that involve strong state interests such as "the health and well-being of its citizens" and are only peripherally related to the NLRA are not preempted by the NLRA. Id.

escape preemption by the NLRA.

### 3. Preemption Under § 301

Finally, Miranda proposes a standard for preemption different from that established by this court in <u>Richardson</u>. Miranda argues that whether a state law claim is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, depends upon whether "resolution of the state claim requires interpretation of a collective bargaining agreement." <u>Wells v. Gen. Motors Corp.</u>, 881 F.2d 166, 173 (5th Cir. 1989) (emphasis omitted). Arguing that his claim against the Defendants does not require interpretation of the collective bargaining agreement between the union and USPS, Miranda therefore contends that his state law claim is not preempted.

While Miranda correctly articulates the standard for preemption under § 301, he fails to recognize that this standard does not apply to his case. LMRA § 301 provides a cause of action for suits to enforce the provisions of a collective bargaining agreement. Miranda's suit is not correctly categorized as a § 301 breach-of-contract claim, as he is not suing USPS for a failure to uphold its responsibilities under the collective bargaining agreement. Instead, Miranda's claim is properly characterized as a duty of fair representation claim, as he is suing his union for its failure to represent him faithfully in its dealings with USPS. <u>See, e.g.</u>, <u>DelCostello v. Teamsters</u>, 462 U.S. 151, 164 (1983) (distinguishing between a § 301 claim against an employer

9

and a duty of fair representation claim against a union).[3] Consequently, the appropriate standard for preemption is whether Miranda is alleging that "the Union breached a duty that arose from its status as [his] exclusive collective bargaining agent under the NLRA." Richardson, 864 F.2d at 1167. Despite his protestations to the contrary, Miranda is indeed alleging the breach of such a duty.

## C.   Statute of Limitations for Duty of Fair Representation Claim

In DelCostello, the Supreme Court held that the six-month statute of limitations of NLRA § 10(b), 29 U.S.C. § 160(b), applies to a "hybrid § 301/fair representation claim," that is, a suit that combines a § 301 claim against the employer with a duty of fair representation claim against the union. 462 U.S. at 163-64, 171-72. In Richardson, 864 F.2d at 1167, and in Smith v.

---

[3] In DelCostello, the Supreme Court acknowledged that a duty of fair representation suit against a union was "inextricably interdependent" with a § 301 suit against the employer, for "the case [the employee] must prove is the same whether he sues one, the other, or both." 462 U.S. at 164-65. In order to prove injury in a duty of fair representation suit against the union, an employee must show that the employer violated the collective bargaining agreement, and an employee normally cannot bring a § 301 action against his employer unless he can show that the union breached its duty of fair representation in handling his grievance. Teamsters v. Terry, 494 U.S. 558, 564 (1990). Nevertheless, Richardson did not adopt the § 301 standard for preemption analysis for duty of fair representation claims, and we are bound to follow Richardson's approach here.
Even if we did apply the § 301 standard to Miranda's claims, however, it would be clear that his claims are preempted. In order to show injury from the Defendants' actions, Miranda would have to demonstrate that USPS's adjustment of his seniority violated the collective bargaining agreement. This demonstration would require interpretation of the collective bargaining agreement, thus satisfying the test for preemption under § 301.

<u>International Organization of Masters</u>, 296 F.3d 380, 382 (5th Cir. 2002), this court held that the same statute of limitations applies to duty of fair representation claims brought independently.

Miranda filed suit against the Defendants on December 27, 2005. Each of the supposed instances of breach of duty by the Defendants, the last of which is alleged to have occurred in December 2004, took place more than six months before Miranda filed suit. Miranda's claims are therefore untimely. <u>See</u> 29 U.S.C. § 160(b).

## IV. CONCLUSION

Because we agree with the district court that Miranda's claims against the Defendants are time barred, we AFFIRM the order of the district court granting summary judgment to the Defendants.

AFFIRMED.

11